# In the United States Court of Federal Claims

No. 14-275T
(Filed: May 31, 2016)

| | |
|---|---|
| GERD TOPSNIK,<br><br>              Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>              Defendant. | Keywords: Tax Refund; Motion to Compel; RCFC 37(a)(5); Sanctions; Order to Show Cause; RCFC 41(b); Dismissal for Failure to Prosecute. |

*Charles H. Magnuson*, Law Offices of Charles Magnuson, Los Angeles, CA, for Plaintiff.

*Brian J. Sullivan*, Attorney of Record, Court of Federal Claims Section, Tax Division, with whom were *G. Robson Stewart*, Assistant Chief, Court of Federal Claims Section, *David I. Pincus*, Chief, Court of Federal Claims Section, and *Caroline D. Ciraolo*, Acting Assistant Attorney General, Tax Division, United States Department of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**Kaplan, J.**

      This tax refund case is currently before the Court to address two matters. The first is whether the Plaintiff, Gerd Topsnik, should be required to pay the expenses the government incurred in bringing a successful motion to compel the production of certain documents under Rule 37(a)(5)(A) of the Rules of the Court of Federal Claims (RCFC). See Order at 2, ECF No. 44.[1] The second is whether this case should be dismissed for failure to prosecute under RCFC 41(b) in light of: (1) Mr. Topsnik's refusal to comply with the Court's Order directing him to make himself available for a deposition, and (2)

---

[1] Unless otherwise noted, a reference to a document's ECF number indicates that the document was filed in the above-captioned case, No. 14-275.

his statement of his intent not to appear at the trial that had been scheduled to begin in the case on February 2, 2016. See Order to Show Cause at 1, ECF No. 55.

As discussed below, Mr. Topsnik has not established that his failure to produce the documents sought in the government's successful motion to compel was substantially justified. Accordingly, the Court hereby **ORDERS** Mr. Topsnik to reimburse the government for expenses incurred in the amount of **$800.58**.

The Court further finds that Mr. Topsnik's response to the Court's show cause order is inadequate and that the justifications that he has provided for refusing to submit to a deposition or attend the scheduled trial are specious. In light of Mr. Topsnik's defiance of the Court's orders in these regards, and the failure of Mr. Topsnik's counsel on multiple occasions to comply with the Rules of the Court of Federal Claims and this Court's directions, the Court concludes that this case should be **DISMISSED** pursuant to RCFC 41(b) for failure to prosecute.

## BACKGROUND

**I.     Claims in this Case and Related Litigation**

The background of this case is set forth in detail in this Court's prior decision granting the government's partial motion to dismiss in Topsnik v. United States, 120 Fed. Cl. 282 (2015) (Topsnik IV), and in Judge Lettow's decision denying the government's motion for a stay in Topsnik v. United States, 114 Fed. Cl. 1 (2013) (Topsnik III).

To summarize, Gerd Topsnik is a German resident who formerly had business interests in the United States. Topsnik IV, 120 Fed. Cl. at 284; see also Topsnik v. Comm'r, 146 T.C. No. 1, 2016 WL 270150, at *1 (T.C. Jan. 20, 2016). The claims at issue in the present case arose out of liens and levies that the IRS imposed in February of 2010 with respect to tax liabilities for tax years 1992, 1993, 1999, 2000, and 2001. Those liens and levies resulted in the collection of more than $250,000 in taxes from Mr. Topsnik. See Topsnik IV, 120 Fed. Cl. at 283–84.[2]

---

[2] Mr. Topsnik has filed separate actions regarding his tax liability for tax years other than those involved in this case in multiple fora. In particular, he has filed at least two suits in the United States Tax Court: one related to income he received between 2004 and 2009, see Topsnik v. Comm'r, 143 T.C. 240, 241–43 (2014); and the other to income he received in 2010, see Topsnik v. Comm'r, 2016 WL 270150 at *1. In both cases, Mr. Topsnik argued he owed no taxes to the United States for those tax years because he was a German resident during those years. See 143 T.C. at 242; 2016 WL 270150 at *4. Mr. Topsnik has appealed in both cases. See Notice of Appeal, Topsnik v. Comm'r, No. 15-1251 (D.C. Cir. Jul. 29, 2015); Notice of Appeal, Topsnik v. Comm'r, No. 16-1130 (D.C. Cir. Apr. 28, 2016). Outside of the Tax Court, Mr. Topsnik also filed an unsuccessful suit in the U.S. District Court for the District of Columbia challenging the IRS's jeopardy

On August 23, 2011, Mr. Topsnik filed a lawsuit in the U.S. District Court for the Central District of California seeking an award of damages based on, among other actions, the IRS levies at issue in this case. See Topsnik v. United States, No. 2:11-cv-06958, 2012 WL 10637570, at *1 (C.D. Cal. Jan. 17, 2012) (Topsnik I), aff'd, 554 F. App'x 630 (9th Cir. 2014). The district court dismissed that lawsuit for improper venue on January 17, 2012, based on 28 U.S.C. § 1402(a)(1), which provides that "[a]ny civil action in a district court against the United States under subsection (a) of section 1346 . . . may be prosecuted only . . . in the judicial district where the plaintiff resides." Id. Because Mr. Topsnik did not reside in the Central District of California (or any other judicial district), the district court held that jurisdiction over what the court characterized as a claim for tax refunds would lie only with this court, where such jurisdiction is conferred by the Tucker Act, 28 U.S.C. § 1491(a). Id.; see also Ledford v. United States, 297 F.3d 1378, 1382 (Fed. Cir. 2002) (Court of Federal Claims has jurisdiction over tax refund suits under the Tucker Act).[3]

Some two weeks later, on January 30, 2012, Mr. Topsnik filed his first complaint in this court (No. 12-58). In that complaint, as in his complaint before the district court in California, he sought relief in the form of "damages" for unlawful collection actions for tax years 1992, 1993, 1999, 2000 and 2001, citing I.R.C. §§ 7432 and 7433 as the bases for his claims. Topsnik IV, 120 Fed. Cl. at 284. Shortly thereafter, the government moved to dismiss No. 12-58 pursuant to 28 U.S.C. § 1500, in light of the fact that Mr. Topsnik had noticed an appeal to the Ninth Circuit of the California district court's ruling dismissing his action in that court.[4] See Topsnik III, 114 Fed. Cl. at 2. On December 12, 2013, Judge Lettow, to whom this case was previously assigned, denied the government's section 1500 motion to dismiss based on the Federal Circuit's intervening decision in

---

assessment and levy on funds related to his 2010 income. See Topsnik v. United States, 12 F. Supp. 3d 1, 2 (D.D.C. 2013).

[3] In accordance with 28 U.S.C. § 1346(a)(1), district courts have concurrent jurisdiction with this court over "[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws."

[4] 28 U.S.C. § 1500 provides that "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States."

Brandt v. United States, 710 F.3d 1369 (Fed. Cir. 2013).[5] Id. The case was then transferred to the undersigned.

Shortly thereafter, the Ninth Circuit affirmed the district court's dismissal of Mr. Topsnik's suit. Topsnik v. United States, 554 F. App'x 630, 631 (9th Cir. 2014) (Topsnik II). The Ninth Circuit agreed with the district court that because Mr. Topsnik resided in Germany and was not a resident of any judicial district, venue did not lie in the district court pursuant to 28 U.S.C. § 1402(a)(1). Id. at 631. It further observed that although Mr. Topsnik had framed his case in the district court as a claim for damages, it was in reality a suit for a tax refund over which the Court of Federal Claims has concurrent jurisdiction under the Tucker Act. Id.

On April 8, 2014, this Court held a status conference with the parties in No. 12-58. During that conference, the Court sought confirmation from Mr. Topsnik's counsel regarding the nature of Mr. Topsnik's claims, which he had characterized as claims for "damages" in the complaint, but which (as described above), both Judge Lettow and the Ninth Circuit had characterized as tax refund claims. Tr. of Status Conference (No. 12-58) at 4–5 (April 8, 2014). The Court cautioned counsel for Mr. Topsnik that, to the extent that he intended to bring claims for "damages," such claims were not within this Court's Tucker Act jurisdiction. Id. at 4:19–23, 10:11–15. On the other hand, the Court assured Mr. Topsnik that it would have jurisdiction if he were instead willing to acknowledge that what he was seeking were tax refunds. Id. at 4:22–23, 10:14–15. In response, counsel for Mr. Topsnik continued to insist—notwithstanding the Ninth Circuit's ruling—that the allegations in No. 12-58 be viewed as claims for damages, not tax refunds.[6] Id. at 5:2–9. Counsel further advised the Court that he planned to file a second complaint the next day, which he characterized as a "refund suit with respect to '92 and '93." Id. at 15:20–22. He identified his rationale for doing so as a desire to avoid being time barred from filing those refund claims in the event that it was ultimately found that this Court lacked jurisdiction over Mr. Topsnik's claims for damages in No. 12-58. Id. at 15:24–16:5.

As promised, on April 9, 2014, Mr. Topsnik filed the present complaint, No. 14-275. In that complaint, Mr. Topsnik alleged (among other things) that the IRS's levy was unlawful because the applicable ten-year statute of limitations had run by the time the

---

[5] In Brandt, the court of appeals held that section 1500 does not bar an action where, as here, a complaint is filed in this court after a related action was dismissed by a district court but before an appeal of the district court's dismissal is noted. 710 F.3d at 1379.

[6] As noted in Topsnik IV, it appears that counsel for Mr. Topsnik resisted a tax refund characterization of his claims because he had not exhausted his administrative remedies for securing a refund for tax years 1999, 2000, and 2001. 120 Fed. Cl. at 285. Those claims would therefore be subject to dismissal on jurisdictional grounds for failure to exhaust. See I.R.C. § 7422; United States v. Clintwood Elkhorn Mining Co., 553 U.S. 1, 7 (2008) ("[T]axpayers seeking refunds of unlawfully assessed taxes must comply with the [Internal Revenue] Code's refund scheme before bringing suit.").

4

IRS assessed it. Compl. ¶ 6 (citing I.R.C. § 6502). But the new complaint was not limited to claims for tax refunds for 1992 and 1993 as Mr. Topsnik's counsel had represented at the April 8 status conference. Instead, Mr. Topsnik requested a judgment "entitl[ing] [him] to recover from defendant a refund of erroneously collected income tax . . . with respect to the tax periods 1992, 1993, 1999, 2000, and 2001." Id. at 7. His new complaint also appeared to assert the very same claims for damages under I.R.C. § 7432 and § 7433 that were made in No. 12-58, and which were the subject of the colloquy at the status conference held on April 8. See id.

After the Court consolidated the cases, it issued an Order adopting the parties' proposed discovery deadline of April 1, 2015, and establishing a briefing schedule for a motion to dismiss by the government. Scheduling Order, No. 12-58, ECF No. 64. Consistent with that Order, on November 14, 2014, the government filed a motion to dismiss that encompassed both No. 12-58 and No. 14-275. Topsnik IV, 120 Fed. Cl. at 283.

In a February 27, 2015 decision, the Court dismissed No. 12-58 in its entirety, ruling that because Mr. Topsnik's claims for damages under I.R.C. § 7432 and § 7433 "sound[ed] in tort," they were not within this Court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1). Topsnik IV, 120 Fed. Cl. at 287. The Court further held that to the extent that Mr. Topsnik was pressing similar damages claims in No. 14-275 (as appeared from his complaint), the Court lacked jurisdiction over those claims as well. Id. at 287 n.4. Thus, the Court retained jurisdiction only over the tax refund claims for 1992 and 1993 in No. 14-275.[7] Id.

## II. The Government's Document Requests and First Motion to Compel

In the meantime, while the motion to dismiss was pending, discovery began. Because the ten-year statute of limitations on IRS collection actions is suspended if a

---

[7] In its decision, the Court noted Mr. Topsnik's suggestion in his response to the government's motion to dismiss that he intended to seek a tax refund for tax year 1999 (notwithstanding his prior disavowal of such intent at the April 8, 2014 status conference, and his failure to reference such a refund in his complaint). Topsnik IV, 120 Fed. Cl. at 287–88. The Court advised Mr. Topsnik that he would need to file a motion to amend his complaint in order to pursue such a claim, id., and Mr. Topsnik subsequently did so. See Pl. Mot. Pursuant to [RCFC] 15 for Leave of Court for the Filing of an Am. Compl., ECF No. 18. In the proposed complaint, he claimed for the first time that he had, in fact, submitted a refund claim to the IRS for tax year 1999. Id. at 2; see also id. Ex. A ¶ 21 (proposed amended complaint). On April 28, 2015, the Court denied Mr. Topsnik's motion to amend his complaint, finding that such an amendment would be futile because, by his own account, Mr. Topsnik's 1999 taxes were assessed on June 22, 2000, and the February 2010 levy thus occurred within the ten-year statute of limitations. See Order at 2, ECF No. 25.

taxpayer is absent from the United States for a continuous period of at least six months, I.R.C. § 6503(c), the government sought information about Mr. Topsnik's whereabouts during the time period in question. See also Treas. Reg. § 301.6503(c)-1(b) (taxpayer is deemed absent from the United States if he is "generally and substantially absent from the United States, even though he makes casual temporary visits during the period"). In a November 20, 2014 request for documents, the government asked Mr. Topsnik to produce "all passports, travel records (including airline, rail, or ship tickets), personal logs, or other documentary evidence demonstrating [his] absence from the United States in each year from 1993 through 2014." See Mot. of the U.S. to Compel Disc. and to Extend the Deadline for Fact Disc. (Def.'s 1st Mot. to Compel) Ex. 1 at 3, ECF No. 16.

As noted above, discovery was originally slated to close on April 1, 2015. See Scheduling Order, No. 12-58, ECF No. 64. Mr. Topsnik, however, initially failed to produce any documents in response to the government's November 20, 2014 request. Therefore, on March 17, 2015, the government filed a motion to compel production and a request for an extension of the discovery deadline. Def.'s 1st Mot. to Compel at 1. In response, on April 3 and April 9, Mr. Topsnik produced (among other items) a set of logs summarizing his travel within the United States during the relevant period. See Tr. of Oral Argument at 3:18–20 (Apr. 15, 2015). These summaries were prepared by Mr. Topsnik's daughter, Bianca Whitty, who occasionally worked as Mr. Topsnik's assistant. See Def.'s Mot. for an Order to Compel Pl. to Produce Certain Docs. (Def.'s 2d Mot. to Compel) at 3, ECF No. 41. In light of Mr. Topsnik's apparent, albeit untimely, compliance with the government's pending request for production of documents, the Court denied the government's first motion to compel as moot and extended the discovery deadline until August 15, 2015. Order at 1, ECF No. 23.

### III.    Efforts to Schedule Mr. Topsnik's Deposition

On July 22, 2015, the Court ordered the parties to propose a joint schedule by August 31, in light of the impending close of discovery on August 15, 2015. ECF No. 26. On August 31, the parties filed separate submissions. ECF Nos. 27 and 28. Both parties noted that they had agreed that the government would take Ms. Whitty's deposition at the offices of Plaintiff's counsel on September 2, 2015. They were unable to agree, however, about the government's entitlement to take Mr. Topsnik's deposition in the United States, rather than in Germany. See id.

Thus, the government advised that on July 31, 2015, it had sent Plaintiff's counsel a notice of deposition, scheduling Mr. Topsnik's deposition in Washington, DC, for August 13, 2015. Def.'s Proposed Scheduling Order at 2, ECF No. 28. According to the government, although he did not file a motion for a protective order, Mr. Topsnik's counsel advised the government that plaintiff could not be ready for deposition until August 16, 2015, and that the deposition "would have to be at the United States Consulate in Frankfurt, Germany." Id. While maintaining its position that "it is plaintiff's duty to appear for his deposition in the United States, given that it is plaintiff's chosen forum to litigate this case," the government offered Prague as an alternative location for the deposition on September 3, 2015, because another Tax Division attorney was

6

planning to be in Prague on that date.[8] Id. Mr. Topsnik, however, declined to agree to be deposed in Prague; he stated that he was "unwilling to voluntarily undertake the cost and devotion of time required in order to travel to the country of Czechoslovakia and as well [sic] committing to the imposition of 600-mile autobahn requirement." Proposed Schedule Status Submission at 1–2, ECF No. 27.

In light of this apparent impasse, the Court held a status conference in the case on October 7, 2015. At the outset of the conference, counsel for Mr. Topsnik asserted that even though Mr. Topsnik had not yet been deposed, "as far as [he was] concerned, discovery is closed and [he] should have the opportunity to file a motion for summary judgment." Tr. of Status Conf. at 3:25–4:2 (October 7, 2015). The Court disagreed, observing that the government was entitled to take Mr. Topsnik's deposition. Id. at 17:16–17.

During the conference, the Court questioned whether it might be possible to conduct Mr. Topsnik's deposition by video, so that he did not have to travel to the United States. Id. at 6:14–15. Counsel for Mr. Topsnik resisted, objecting that taking Mr. Topsnik's deposition by video would somehow constitute "a violation of Rule 30 with respect to a distortion of the recording by that process." Id. at 6:17–21. He made reference to the video deposition that the government had conducted of Ms. Whitty, asserting that "they had this video system set up so that it looked like, I would say, the Spanish Inquisition." Id. at 7:5–7. Counsel for the government suggested another option—having Mr. Topsnik appear for a deposition one week prior to trial in the United States. Id. at 9:12–10:2.

Further discussion then ensued about whether the case would ultimately be decided on summary judgment or after trial. Id. at 12:4–15:3. At the conclusion of that discussion, the Court expressed its determination that the case should be tried, in light of the existence of factual issues and the fact that the trial would be a brief one, likely to last only two days. Id. at 15:16–16:3. Finally, the Court and the parties returned to a discussion about making arrangements for a video deposition to be held in Germany. It was agreed that the government would inquire into the logistics of scheduling a video deposition; that the parties would attempt to come to an agreement on the matter; and that they would report back to the Court regarding the matter. Id. at 17:13–22:13.

Consistent with the foregoing, after the status conference, the Court issued an Order directing the parties to "promptly confer in an effort to arrange for a video deposition of the plaintiff" and to report back on those efforts by October 15, 2015. Order, ECF No. 31. On October 15, the parties informed the Court that they were unable to agree upon arrangements for a video deposition. See Joint Status Report at 4–6, ECF

---

[8] Emails exchanged between the parties during this time period indicate that the government had suggested Prague instead of a location in Germany because of "complications" involved in the taking of depositions in Germany, which would result in the requirement that at least six weeks' notice be given before the deposition could be taken. See ECF No. 33-1. This requirement is discussed in greater detail below.

No. 32. Apparently, Plaintiff's counsel had suggested that Mr. Topsnik appear for a video deposition in late October or early November at the office of counsel in Bad Mergentheim, Germany. Id. at 1–2. The government, however, asserted that this arrangement was not possible because agreements between the United States and Germany specify that depositions may only be taken at the United States Consulate in Frankfurt, and only upon at least six weeks' notice, with the express permission of the German Ministry of Justice. Id. at 4–5 (citing http://germany.usembassy.gov/acs/judicial-assistance/).

In light of this restriction, the government requested that the Court either order a deposition to take place in accordance with the specified procedures or direct that Mr. Topsnik appear for a deposition one week prior to the trial date, with the deposition to take place in Washington, DC, or the place of trial. Id. at 5–6.

Meanwhile, in a separate statement to the Court, Mr. Topsnik again argued that the government should not be permitted to take his deposition at all because "[t]he [g]overnment did not properly prepare for Plaintiff's deposition" before the August 15 close of discovery. See Pl. Submission Concerning Gerd Topsnik Deposition at 3, ECF No. 33. He also made a series of statements accusing the government of acting in bad faith. According to Mr. Topsnik, "[d]iscovery [was] not the goal being sought by the government, but rather delay is the [government's] modus operandi," and "[t]he [g]overnment seeks to use discovery to intimidate, distort, insinuate, and humiliate by adopting standards of an inquisitional interrogation." Id. at 6. Moreover, despite the Court's determination during the October 7 status conference that the case would need to go to trial, Mr. Topsnik continued to contend that he was "entitled to a summary disposition of the matters now before the Court." Id. at 3.

## IV. The Court Directs that Mr. Topsnik Submit to a Deposition One Week Before Trial

In an October 15, 2015 Order, the Court ruled that Plaintiff's objections to the government's assertion of its right to depose Mr. Topsnik lacked merit. The Court observed that "[t]he government is entitled to take the plaintiff's deposition and has been flexible with plaintiff's counsel in attempting to arrange it." Order at 1–2, ECF No. 34. Further, "[g]iven the fact that compliance with the existing protocols for conducting a video deposition would further delay the completion of discovery and the ultimate resolution of this case on the merits, the Court conclude[d] that the best course of action [was] for the plaintiff to make himself available for deposition the week before the trial in this matter, at the location set for trial." Id. at 2. Accordingly, it ordered Mr. Topsnik to "make himself available for deposition by the government at the location set for trial at a mutually agreed upon time one week prior to the trial." Id. The Court further ordered the parties to submit a proposed pre-trial scheduling order consistent with Appendix A, section VI of the RCFC no later than November 2, 2015, and that the Order propose a location for the trial as well as a trial date in February 2016. Id.

8

## V.     The Parties' Proposed Pre-Trial Orders

On November 2, 2015, Mr. Topsnik filed his own document which he styled a proposed "pretrial scheduling order." ECF No. 35. The document, however, did not comply with this Court's order requiring consistency with RCFC Appendix A, section VI and did not, as the Court had directed, propose a location for the trial or a trial date in February 2016. Instead, Mr. Topsnik used the occasion to again put forth his several-times-rejected positions that the case be decided on summary judgment, and that the government was not entitled to depose him. See id.

The government, on the other hand, filed a compliant proposed pre-trial scheduling order. ECF No. 36. It observed that although it had attempted to work with Mr. Topsnik's counsel on a joint proposal, the draft that counsel had provided to the government did not comply with RCFC Appendix A, section VI, instead "containing only a suggestion for the filing of plaintiff's summary judgment motion, with no reference to any of the Court's other requirements." Id. at 2. Further, when government counsel forwarded a copy of RCFC Appendix A, section VI to counsel for Mr. Topsnik, in an effort to coordinate a joint proposal, counsel for Mr. Topsnik did not respond, instead submitting the non-compliant proposal described above. Id.

## VI.    The Court Issues a Pre-Trial Order, and Rejects for a Second Time Mr. Topsnik's Request that the Case Be Decided on Motions for Summary Judgment

On November 4, 2015, the Court issued a pre-trial scheduling order. ECF No. 38. It set the trial for February 2, 2016, in Los Angeles, CA, which was the location for which Mr. Topsnik had stated a preference in the parties' original joint preliminary status report. Id. It also directed that Mr. Topsnik's deposition be taken in Los Angeles the preceding week, on January 26, 2016. Id. Finally, the Court noted that because counsel for Mr. Topsnik had failed to consult in good faith with government counsel regarding the pre-trial schedule, the Court would adopt the government's proposed dates for the exchange of witness lists and exhibits and for the filing of pre-trial briefs.[9] Id.

In its Order, the Court reiterated its decision that the case would be decided after trial and not on motions for summary judgment. It observed that "summary judgment is not the appropriate vehicle for resolving this case in its present posture because the government has not had the opportunity to depose the plaintiff, and because the case appears to involve disputed material facts regarding the dates when plaintiff was present in the United States." Id. The Court also rejected again Plaintiff's argument that the government had waived its right to depose him by not making arrangements to do so in

---

[9] It bears noting that in setting the trial and deposition for Los Angeles, the Court bent over backwards in an effort to accommodate Mr. Topsnik (despite his failure to submit a compliant pre-trial scheduling order). The government had expressed a preference in its compliant proposed pre-trial scheduling order that the trial and Mr. Topsnik's deposition be held in Washington, DC.

Germany. Id. The Court noted that the government had made good faith—albeit unsuccessful—efforts to accommodate Plaintiff's desire not to travel to the United States for a deposition and that it was a reasonable compromise to schedule Mr. Topsnik's deposition in Los Angeles shortly before the trial so that Mr. Topsnik would only be required to make one trip to the United States. Id.

### VII. The Government's Second Motion to Compel

In the meantime, as noted, Ms. Whitty was deposed in early September 2015. See Def.'s Proposed Scheduling Order at 1, ECF No. 28. During the deposition, Ms. Whitty admitted that, in addition to preparing summaries of Mr. Topsnik's travels inside the United States, she had also compiled summaries of Mr. Topsnik's travels outside the United States during the relevant years. See Def.'s 2d Mot. to Compel Ex. B at 3–4. Ms. Whitty initially testified that she had previously faxed these documents to the government, but upon further questioning she stated that she had only received verifications of receipt for the summaries covering two of the years. See id.

In November, after the Court issued its pre-trial order, and then into December, the government contacted counsel for Mr. Topsnik on six occasions to request that he provide copies of the summaries of Mr. Topsnik's travels outside the United States that were discussed at Ms. Whitty's deposition. See id. at 4 (asserting that the government asked for the summaries on six occasions between November 12, 2015 and December 4, 2015); id. Exs. D–E. According to the government, counsel for Mr. Topsnik did not respond to any of these requests. Id. at 4.

The government then moved to compel production of the summaries. In response, Plaintiff filed a rambling, essentially unresponsive opposition to the government's motion in which he reiterated his complaints about, among other things, the government's alleged mistreatment of Ms. Whitty at her deposition and the fact that Mr. Topsnik's deposition was to be held in the United States, as the Court had ordered, and not in Germany, as he wished. Pl.'s Opp'n to Mot. to Compel Production of Certain Docs. (Pl.'s Opp'n to 2d Mot. to Compel), ECF No. 43. At oral argument on the government's motion, Mr. Topsnik stated that he was not required to produce the documents because "discovery has been closed" and because the government was "saying they don't have what I believe they do have." Tr. of Oral Argument at 5:2–12 (Jan. 8, 2016).

On January 8, 2016, the Court granted the government's motion to compel, observing that it was "undisputed that the government's document request occurred well before the close of discovery, that Ms. Whitty possesses the documents, and that the government did not learn that it had not received all of the relevant documents until Ms. Whitty's deposition." See Order at 2, ECF No. 44. As contemplated by RCFC 37(a)(5), the Court also ordered Mr. Topsnik to file a memorandum explaining why the Court should not order him to pay the expenses the government incurred in preparing its motion to compel. See id.

### VIII. Mr. Topsnik's Ultimate Refusal to Make Himself Available for Deposition or Trial

At the same time, Mr. Topsnik's opposition to the government's second motion to compel also raised a new red flag. . In it, Mr. Topsnik indicated (for the first time) that he had significant misgivings about whether he could comply with the Court's order directing that his deposition be taken in the United States. See Pl.'s Opp'n to 2d Mot. to Compel at 6–10. Though he did not cite to any specific provisions of law or elaborate on his reasoning, Mr. Topsnik informed the Court that, in his view, "[w]ith respect to . . . having a German citizen participa[te] in a deposition other than in Germany such citizen can be subjected to sanctions provided for under the Germany discovery Convention." Id. at 8.

In light of this assertion, and considering counsel's previous history, and in light of the impending trial date, at the oral argument on the government's motion the Court raised the issue of whether Mr. Topsnik intended to comply with its Order that he submit to a deposition in Los Angeles. Tr. of Oral Argument at 6:24–7:4 (Jan. 8, 2016). The Court explained to Mr. Topsnik's counsel that it was "not aware of any kind of prohibition in German law against Mr. Topsnik testifying in a deposition in the United States." Id. at 8:4–6. Mr. Topsnik's counsel then stated that under some unspecified provisions of the Hague Convention Mr. Topsnik "could be subject to penalties if he volunteers for the taking of his deposition in any other location than the German Embassy." Id. at 9:24–10:3. The Court expressed its displeasure that—notwithstanding that it issued an Order in early November directing that Mr. Topsnik submit to a deposition in Los Angeles—this was the first time that the Court was being advised of this position.[10] Id. at 10:8–13. It informed Mr. Topsnik that "if there is actually an argument to be made that it's going to subject Mr. Topsnik to a penalty of some sort to appear at the deposition," counsel should file a motion for a protective order or a motion to reconsider the Court's earlier Order directing him to appear in the United States for his deposition. Id. at 8:15–21. The Court further requested that counsel "please, make sure that there's some merit to the argument because I've never heard this before" and reminded counsel that "if it turns out that there is no merit to the argument, then [Mr.

---

[10] The Court notes that in a response to the government's proposed pre-trial scheduling order (ECF No. 36) which was filed before the Court issued its pre-trial order, Mr. Topsnik made a cryptic passing reference to unspecified provisions of "international law," which he asserted would prohibit the scheduling of a deposition of a German citizen outside of Germany. See Pl.'s Resp. to Proposed Pre-Trial Schedule Order by Def. at 2, ECF No. 37. Mr. Topsnik asserted that the government "well knows and knew" of this prohibition when it "attempted to induce Mr. Topsnik to travel to Prague." Id. Given the oft-times impossible-to-decipher and off-the-cuff nature of the musings in Mr. Topsnik's pleadings, the Court did understand this cryptic reference to constitute a serious legal objection by Mr. Topsnik to having his deposition taken in the United States. The reference did not appear again in any of Mr. Topsnik's subsequent submissions until his response to the government's second motion to compel.

Topsnik] needs to appear on the 26th." Id. at 10:16–26. In response, counsel for Mr. Topsnik stated that he "accept[ed] that." Id. at 10:27–29.

A few days later, on January 12, 2016, Mr. Topsnik filed a motion for a protective order, in which he requested a "ruling prohibiting the deposition place, time and date from being other than in Germany." Pl.'s Mot. for a Protective Order With Respect to Prospective Individual Pl. Deposition Other Than In Germany at 4, ECF No. 49. In addition, he indicated for the first time that he was also apparently unwilling to appear in the United States for his trial, claiming that doing so without "an order from a Court of United States Court [sic] requiring that a German Participant appear or even become available in the United States with respect to a pending trial for the taking of a deposition could in the absence of an objection subject a German participant to German criminal penalties."[11] Id. at 2.

On January 15, 2016, the Court denied Mr. Topsnik's motion, ruling that his contentions "lack[ed] merit" because any "limitations that may apply . . . when depositions are conducted in Germany . . . have no apparent relevance to depositions conducted in the United States." Order at 2, ECF No. 50. Further, Mr. Topsnik had not "identified any provision of German law which might subject him to criminal penalties for submitting to a deposition in the United States." Id.

Following this ruling, on January 20, 2016, just six days before his scheduled deposition and some two weeks before the scheduled trial, Mr. Topsnik filed his memorandum in response to the Court's order granting the government's second motion to compel. See Pl.'s Mem. Pur[s]uant to 01/08/16 Order as to Certain Doc. Production Discovery (Pl.'s Rule 37 Mem.), ECF No. 53. In the middle of this otherwise-unrelated pleading, counsel for Mr. Topsnik dropped another bombshell, asserting that despite the Court's January 15 ruling denying his motion for a protective order, he did not plan to make Mr. Topsnik available for his deposition in Los Angeles or for the trial.[12] Id. at 5–6. As justification, he cited unnamed "German counsel" who had supposedly "advised Mr. Topsnik that he should not appear for the taking of his deposition in the United States." Id. Thus, he continued, "Mr. Topsnik will not travel to Los Angeles to be available for a court appearance on February 2nd." Id.

In light of Mr. Topsnik's refusal—for specious reasons—to appear either at the deposition or at the scheduled trial in his own case, the Court cancelled his deposition and the trial and ordered Mr. Topsnik to show cause why his case should not be dismissed for

---

[11] The Court notes that Mr. Topsnik had been listed as a witness on the list that his own counsel filed on November 23, 2015 pursuant to this Court's pre-trial order. See ECF No. 39.

[12] Mr. Topsnik also sent an email to counsel for the government indicating that he would not travel to the United States for his deposition. See Def.'s Resp. to Pl.'s Resp. to the Court's Order to Show Cause (Def.'s Resp. to Show Cause Order) Ex. A at 1, ECF No. 59.

failure to prosecute under RCFC 41(b). Order to Show Cause at 1, ECF No. 55. Mr. Topsnik filed a memorandum in response, ECF No. 58, and the government has responded to Mr. Topsnik's response, ECF No. 59.

## DISCUSSION

### I. Award of Expenses Pursuant to RCFC 37(a)(5)

Under RCFC 37(a)(5), upon granting a party's motion to compel, a court "must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." This requirement is not applicable, however, if the non-moving party shows that:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Id.

Rule 37's sanctions serve to "combat the abuse of the discovery process" by "'discourag[ing] delay, waste of resources, and dilatory practices in favor of full disclosure of relevant information prior to trial.'" Canvs Corp. v. United States, 104 Fed. Cl. 727, 731–32 (2012) (quoting Morris v. United States, 37 Fed. Cl. 207, 212–13 (1997)). Once the rule's sanctions have been triggered, "'[t]he burden is on the party facing sanctions to prove that its violation was . . . substantially justified.'" Council for Tribal Empl. Rights v. United States, 110 Fed. Cl. 244, 249 (2013) (quoting Elion v. Jackson, 544 F. Supp. 2d 1, 6 (D.D.C. 2008)). To do so, the party must show that its actions had "'a reasonable basis in law and fact.'" Id. at 250 (quoting Decision Insights, Inc. v. Sentia Group, Inc., 311 F. App'x. 586, 599 (4th Cir. 2009)).

The Court concludes that Mr. Topsnik has not met his burden of demonstrating the existence of any of the exceptions to the mandatory imposition of costs in this case. First, it is clear that the government attempted to confer with Mr. Topsnik in good faith about the summaries at issue before filing its motion to compel. Mr. Topsnik does not contend otherwise. Instead, his apparent position is that he was not required to respond because he was contacted by a government attorney "other than counsel of record." See Pl.'s Opp'n to Mot. to Compel at 4–5.

This contention does not provide a reasonable basis for ignoring the government's requests. The point of designating a single attorney as the attorney of record is to fix a responsible party for the court's interactions with counsel; it does not somehow create an exclusive channel for communication between the parties. See Assiniboine and Sioux Tribes of Fort Peck Indian Reservation v. United States, 16 Cl. Ct. 158, 165 (1989) (explaining that the "purpose of the requirement that there be but one attorney of record

13

for a party at any one time . . . is to fix responsibility for the signing of papers on a specific individual as an officer of the court"); Prestex, Inc. v. United States, 4 Cl. Ct. 317, 321 (1984) (observing that the attorney of record is "answerable to the court").

In addition, Mr. Topsnik has not articulated a substantial justification for refusing the government's requests. In fact, his supposed "justifications" are baseless. Thus, in his memorandum in response to the Court's order granting the government's second motion to compel, Mr. Topsnik claimed that Ms. Whitty brought the summaries in question to her deposition, but that the government had failed to inquire about them. See Pl.'s Rule 37 Mem. at 3–4. Contrary to this assertion, the deposition transcript makes clear that the government did, in fact, ask Ms. Whitty about those documents, and that she testified that they were at her home. See Def.'s 2d Mot. to Compel Ex. B. at 3. More to the point, even if Ms. Whitty had the documents with her at her deposition, that does not constitute a reasonable basis for not producing them later at the government's request, given the government's representation that it did not receive the documents in response to its initial document request and the absence of any evidence to the contrary.

Mr. Topsnik also contends that by the time the government sent its follow-up requests for the documents, "the time for discovery ha[d] long past," and that "allowing for any other discovery such as document production beyond the time period allowed for by the Court requires a judicial rejection." Pl.'s Opp'n to 2d Mot. to Compel at 1, 8. But the government's follow-up contacts with counsel were not new requests for the production of documents; they were efforts to secure copies of documents that were requested in November 2014, and which Mr. Topsnik claimed to have produced in April 2015, but which the government apparently did not receive. See Def.'s 2d Mot. to Compel at 2–3.

Finally, there are no other circumstances which would make the award of expenses unjust. In fact, this motion to compel was the second one that the government was required to file as a result of Mr. Topsnik's failure to timely respond to the government's document requests. The Court's time, as well as the time of government counsel, were wasted as a result of Mr. Topsnik's unreasonable resistance to his obligations under Rule 26. Accordingly, Mr. Topsnik is hereby **ORDERED** to pay the government's expenses incurred in preparing its motion, which total $800.58.[13]

## II.    RCFC 41(b) Dismissal

Under RCFC 41(b), the Court may "dismiss . . . the action" if "the plaintiff fails to prosecute or to comply with these rules or a court order." "The authority of a court to dismiss . . . for lack of prosecution has generally been considered an 'inherent power,' governed . . . by the control necessarily vested in courts to manage their own affairs so as

---

[13] The government asserts that it spent six hours of attorney time attempting to contact Mr. Topsnik and preparing its motion to compel at a total hourly rate of $133.43. Def.'s Resp. to Pl.'s Mem. on Costs at 4 & n.3, ECF No. 56. The Court finds that the government's expenditure of time and its hourly rate are reasonable.

to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630–31 (1962); see also Julien v. Zeringue, 864 F.2d 1572, 1575 (Fed. Cir. 1989) (observing that "[i]f the judicial process is to function effectively, we must retain the ability to control our docket and dismiss cases where counsel fail to perform their duties"). Dismissal under this rule is justified "when a party fails to pursue the litigation diligently, and flagrantly disregards the court's orders and rules." Colbert v. United States, 30 Fed. Cl. 95, 98 (1993) (quoting Cash Express, Inc. v. United States, 23 Cl. Ct. 136, 137 (1991)); see also Claude E. Atkins Enterprises, Inc. v. United States, 899 F.2d 1180, 1185 (Fed. Cir. 1990) (case dismissed after plaintiff repeatedly failed to submit filings as ordered by the court); Kadin Corp. v. United States, 782 F.2d 175, 177 (Fed. Cir. 1986) (case dismissed where plaintiff failed to file an amended complaint and to respond to the government's discovery requests as ordered by the court).

Here, Mr. Topsnik's counsel repeatedly and flagrantly failed to comply with the Court's orders and rules and often engaged in obstructionist behavior. Even before Mr. Topsnik's ultimate act of defiance (i.e., his refusal to appear in the United States for his deposition or trial), a non-exhaustive list of his counsel's improper behavior would include: (1) his failure to timely respond to the government's document production requests, resulting in two motions to compel that wasted the Court's time and that of government counsel; (2) his announcement that Mr. Topsnik would not appear for a properly noticed deposition in August 2015, without seeking a protective order; (3) his filing of unauthorized surreplies which the Court was required to strike from the docket; (4) his failure on several occasions to consult in good faith with government counsel in order to comply with the Court's requests for joint filings; and (5) his repeated insistence (up through his response to the show cause order) that he was entitled to have his case resolved on motions for summary judgment, in spite of the Court's determination to the contrary, expressed on multiple occasions.

In that regard, while Mr. Topsnik may have preferred to have the case decided without a trial so that he might never have to travel to the United States to prosecute the case he filed here, it was the Court's prerogative, not his, to decide whether summary disposition was appropriate in this case. See L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527, 1530 (Fed. Cir. 1995) (a trial court has "the inherent power to 'control the disposition of causes on its docket with economy of time and effort for itself, for counsel and for litigants'" (quoting Landis v. North Am. Co., 299 U.S. 248, 254 (1936))); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (holding that summary judgment is not appropriate where "there is reason to believe that the better course would be to proceed to a full trial"). The Court concluded that—particularly in light of Mr. Topsnik's reluctance to submit to a deposition outside of Germany for what the Court initially understood to be reasons of convenience—the most efficient way to decide this case was after a short trial, rather than on motions for summary judgment. It appears to the Court, based on counsel's course of conduct, that Mr. Topsnik never accepted the Court's decision, as he persisted to the very end in pressing his argument that the Court should not only resolve the case on summary judgment, but that it should do so without giving the government the chance to depose Mr. Topsnik.

This pattern of defiance culminated in counsel's statement that—notwithstanding the Court's denial of his motion for a protective order—Mr. Topsnik would not attend a deposition on the date and in the location (Los Angeles, California) that the Court had identified months earlier as a reasonable compromise in an effort to accommodate Mr. Topsnik himself. At the same time, and just a few weeks ahead of the scheduled trial, counsel announced that Mr. Topsnik would not appear for the trial in Los Angeles, the location where he had requested that the trial be held. And, as noted, the reasons he provided for his non-attendance at both his deposition and the trial—that doing so would subject him to penalties under German law—were not only specious, but had already been rejected by the Court after he was provided an opportunity to fully brief them.

In his response to the show cause order, Mr. Topsnik appears to argue that he somehow was not bound by the Court's order regarding his deposition because that order lacked sufficient specificity as to the precise location and time the deposition would be held.[14] See Pl.'s Show Cause Mem. at 2–3; Pl.'s Reply to Def. Order to Show Cause Resp. (Pl.'s Show Cause Reply) at 9, ECF No. 60. This argument has no merit, as the Court's October 15, 2015 Order specified that the specific time of day that the deposition was to be held, and the specific location for its conduct, was to be agreed to by the parties. See Order at 2, ECF No. 34. If Mr. Topsnik required for some reason that the Court itself provide greater specificity, then he had numerous opportunities to request that it do so.

Finally, Mr. Topsnik's pattern of problematic conduct throughout this litigation demonstrates that a less drastic sanction than dismissal will not cause him to "act responsibly." See Colbert, 30 Fed. Cl. at 99. Mr. Topsnik has shown no desire to conduct this litigation in accordance with the Court's rules, and his acts evince a complete unwillingness to actually carry the matter through to trial. Accordingly, dismissal under RCFC 41(b) is an appropriate sanction for his conduct in this matter. See Claude E. Atkins Enterprises, 899 F.2d at 1185; Kadin Corp., 782 F.2d at 177.[15]

---

[14] As he has throughout this litigation, Mr. Topsnik remains fixated in his response to the show cause order on the same tangential matters raised in prior pleadings, such as his critique of the government's conduct of Ms. Whitty's deposition (now including a bewildering objection to government counsel's use of the title "Ms." to refer to Ms. Whitty during her deposition), as well as the supposed unreasonableness of the government's interactions with him respecting whether Mr. Topsnik's deposition would be held in Germany. See Pl.'s Show Cause Reply at 1–8. It is unclear to the Court how these concerns could have any bearing on Mr. Topsnik's obligation to comply with the Court's direct orders.

[15] The government argues that the sanction of dismissal would also be appropriate under RCFC 37(b), and RCFC 37(d), for failure to follow a court order and failure to attend a deposition, respectively. See Def.'s Resp. to Pl.'s Resp. to the Court's Order to Show Cause at 2, ECF No. 59. Because the Court concludes that dismissal is appropriate under RCFC 41(b) for failure to prosecute, it does not address these alternative grounds.

**CONCLUSION**

For the reasons discussed above, Mr. Topsnik is hereby **ORDERED** to make payment to the government in the amount of **$800.58** to pay for the reasonable expenses incurred by the government in bringing its second motion to compel. Further, this case is hereby **DISMISSED** under RCFC 41(b) with prejudice. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

      /s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge